Case for a malicious prosecution, in causing the plaintiff to be arrested on a warrant charging her with feloniously stealing a parcel of belt ribbons. Plea, the general issue. In support of her action the plaintiff produced and proved the warrant stated in the declaration, issued on the oath and at the instance of the defendant. The magistrate before whom it was tried testified that a belt ribbon found in possession of the plaintiff, was produced before him, and that, after examining the witnesses for the prosecution, among whom was the prosecutor, John M. Stafford, the present defendant, he dismissed the warrant, it being proved on the part of the present plaintiff that she had purchased the belt produced, or one like it, at a store in Salem a short time before.
The defense relied upon was that the defendant had a probable cause for the prosecution, and to establish it he introduced several witnesses. One Hartman testified that the defendant was a merchant, and (393) that the witness, on a Friday, about the last of April, 1840, went to his store and saw the plaintiff, two of her sisters, two grown ladies, and several school girls in the room; that several parcels of goods were on the counter, near which the grown ladies were standing, the children being a little in the rear; that he saw the plaintiff, with one elbow on the counter, leaning over, as if she were examining a bunch of ribbons which she had in her hands; that when he first went into the *Page 291 
storeroom the plaintiff looked towards him; that he did not turn his attention to her afterwards; that in about 15 minutes she and her sisters left the store, together with all the other females; that after the company were gone, the defendant commenced putting his goods on the shelf, when he seemed to miss something, and took the goods down to examine whether the articles alleged to have been lost were among them; that the witness then told him he had seen the plaintiff have the ribbons in her hands; that the defendant then took the goods down again, reexamined them and opened the folds of the goods; that the plaintiff lived with her father, about two miles or two miles and a half from the store; that on the following Sunday he saw her at a preaching, wearing a new belt ribbon; that he saw the defendant on the Tuesday or Wednesday afterwards, when the defendant said to him he had seen or found his ribbons on Sunday; that the witness replied to him that he had seen the plaintiff have on a new ribbon; that he might or might not have told the defendant that the ribbon resembled his; that he did not recollect, but thought he did not tell him so; that the ribbon produced before the magistrate and now on this trial resembled in color some of those he saw the plaintiff have in the store.
Miss Martha Harris testified that she had frequently been in the defendant's store up to within a few months of the time when the warrant was taken out, and had seen ribbons resembling in color the one produced by the plaintiff on the trial; that she had never seen the plaintiff wear any ribbon like it, and she has never since seen the ribbons in the store; that the defendant's ribbons were of different figures (394) and colors.
W. L. Swaim stated that he acted as clerk for the defendant during April Court, 1840, and that he saw in his store during that time ribbons like the one produced.
Jackson Stafford testified that he had owned the store, and sold it to the defendant about twelve months before that time; that among the goods were belt ribbons like the one shown on the trial; that he never saw any of the same kind in other stores.
A witness, Alspaugh, testified (the plaintiff objecting to his testimony) that he was present on the Tuesday or Wednesday mentioned by Hartman, and that Hartman did tell the defendant that the ribbon he saw the Sunday before resembled or was similar in color to his.
Ezekiel Thomas testified that he had told the defendant, before he sued out the warrant, that he heard Hartman say the ribbon resembled his in color.
The plaintiff then called a Mr. Lineback, who stated that he had been acting as a clerk in a store for about five or six years; that at the time when the warrant was taken out he was a clerk in a store in Salem, and *Page 292 
that some three or four weeks before that time he had sold to the plaintiff, who came there in company with her mother, a belt ribbon of the same kind, quality, and color as that produced here on the trial; that such ribbons at that time were common and generally worn. It was also in proof that, besides two stores in Salem, there were two or three others within a few miles of the defendant's store.
Rachel Ebbert testified that she went with the plaintiff and her sisters to the defendant's store on the Friday mentioned; that it was the last day of a school in the immediate neighborhood; that several females were in company; that the females stood along the counter, and the defendant behind the counter; that the plaintiff stood immediately on her left; that the plaintiff had a bunch of ribbons in her hands, and after examining them handed them to the witness, who also examined them and then laid them down on the counter to the right; that the defendant was then some 5 or 6 feet from her, but whether he saw her lay the ribbons down, or was looking at her, she did not now recollect, (395) nor does she know whether she saw them afterwards on the counter; that some 15 minutes thereafter she and all the female company left the store, but she saw neither the plaintiff nor her sisters have any ribbons.
Jacob Shultz testified that he had known the plaintiff ever since she was quite young; that her character was good, and that she was about 16 years old when the warrant was sued out.
For the purpose of showing that no felony had been committed; that the defendant had not used diligence to inform himself on that subject, and to contradict Hartman as to the search he said the defendant had made among his goods, the plaintiff proposed to prove that in the month of June, after issuing the warrant (which was dated 22 May, 1840), the same bunch of ribbons the plaintiff had had in her hands was found in a fold of one of the pieces of goods which were spread on the counter during the time the plaintiff was in the store, but the introduction of this testimony was opposed by the defendant and rejected by the court.
The court charged the jury that probable cause is the existence of such facts and circumstances as are sufficiently strong to excite in a reasonable mind suspicion that the person charged with having been guilty was guilty; that it is a case of apparent guilt, contradistinguished from real guilt, and that if they believed the testimony of Hartman, Stafford, Martha Harris, and W. L. Swaim, there was probable cause, and that this testimony as to probable cause was not weakened by the testimony of Alspaugh and Thomas.
The plaintiff's counsel then prayed the court to instruct the jury that they might take the testimony of Rachel Ebbert, in connection with the defendant's testimony as to probable cause, as tending to show that the *Page 293 
plaintiff was not the last person to handle the ribbons while in the store, and that the defendant knew it. To this the court replied that the witness not recollecting that the defendant saw her with the ribbons, there could be no inference from her testimony that the defendant knew it. The plaintiff's counsel also prayed the court to instruct the jury that, after the prima facie case made by the plaintiff, it was (396) incumbent on the defendant, in making out probable cause, to satisfy the jury that a felony had been committed, which instruction was refused by the court. The plaintiff's counsel further prayed the court to instruct the jury that, although there might be probable cause for suing out the State's warrant without a felony having been committed, yet the defendant was bound to use reasonable diligence to inform himself, of the facts and circumstances relative to the supposed felony, and if he did not use such reasonable means so as to inform himself, probable cause did not exist. This instruction was also refused by the court. The plaintiff's counsel further prayed the court to instruct the jury that if they were satisfied from all the circumstances and evidence in the case that the defendant knew at the time he sued out the warrant that the plaintiff was innocent, they should find for the plaintiff. On this the court told the jury there was no evidence in this case from which they could infer such knowledge on the part of the defendant.
The jury found a verdict for the defendant, and judgment being rendered thereon, the plaintiff appealed.
This is the same cause in which this court granted a new trial heretofore. Swaim v. Stafford, 25 N.C. 289. To the evidence then given, the plaintiff has, on the last trial, made some addition. Rachel Ebbert testified that the plaintiff, when in the defendant's store, stood immediately on her left at the counter; that the plaintiff had a bunch of ribbons in her hand and, after she had examined them, handed them to the witness, who also examined them and then laid them down on the counter on her right hand; and that in fifteen minutes thereafter she and the plaintiff and their company left the store and she did not see them have any ribbons. This witness could not say that the defendant saw her examine the ribbons or lay them down on the counter on her right-hand side. This testimony was offered to show that (397) the defendant should not, as a reasonable man, have placed any reliance on what had been told him by the witness Hartman, but the judge said that it did not appear from the said Rachel Ebbert's testimony that the defendant saw or noticed what she now deposes to, and *Page 294 
therefore the said evidence was immaterial in the cause. We concur with his Honor for the reasons he gave.
Secondly. The time the plaintiff was in the defendant's store was about the last of April or first of May, 1840. The plaintiff offered to prove that the defendant's ribbons were found in his store, in June, 1840, in a fold in one of the bolts of cloth that had been on the counter on the day the plaintiff was in his store, but this evidence was refused by the court. This evidence was offered for the purpose of showing that the defendant had not used reasonable diligence in ascertaining whether his ribbons had been taken away or not, and also for the purpose of contradicting the defendant's witness Hartman, who, in his evidence, had said that the defendant did make two searches and examinations for the ribbons in and among the goods and cloths that had been lying on the counter when the plaintiff and her company were there.
We think that the evidence, if admitted, could only have shown that the charge made by the defendant was untrue. It would not have established that the defendant had before that time instituted the prosecution without probable cause, or had been either careless or negligent in searching for his ribbons. It would only have shown that he had not used the utmost degree of diligence to ascertain whether the ribbons were carried from his store. The utmost possible diligence and search by him could not be required. Hartman said that the defendant made two searches among the goods for the ribbons, and he failed to find them. The fact that the ribbons were in the folds of some of the cloths which had been lying on the counter is no evidence to contradict Hartman, when he says that the defendant twice examined the goods. It (398) would only prove that the two searches made by the defendant were not thorough, though, if honestly made, so that the defendant really believed then that the ribbons were gone, the ground of the prosecution would have appeared to him as reasonable as if the ribbons had been in fact taken. We are of opinion that all the facts and circumstances in the case were of such a nature as to induce the defendant, when he took out the warrant on 22 May, 1840, really to believe that the plaintiff had stolen his ribbons, and in such a case he is not liable to this kind of action, as we said in the former case.
PER CURIAM. No error.
Cited: Beale v. Roberson, 29 N.C. 284; Stanford v. Grocery, Co.,143 N.C. 424; Morgan v. Stewart, 144 N.C. 425; Wilkinson v. Wilkinson,159 N.C. 270. *Page 295